IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ROBERT LYNN PRUETT § | |
| Petitioner, § | |
| § | |
| v. § | Civil No. C-06-465 |
| § | |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

## PETITIONER'S RESPONSE TO
## MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE COURT:**

PETITIONER, ROBERT LYNN PRUETT, (hereafter "Petitioner") makes the following response to Respondent, Nathaniel Quarterman's (hereafter "Respondent") Motion for Summary Judgment, and shows the following:

I.

Petitioner objects to any factual assertions in Respondent's Motion for Summary Judgment not supported by affidavit or the trial court record.

II.

Petitioner agrees with the Motion for Summary Judgment assertions that each of his first nine grounds for relief are properly presented for federal habeas corpus review, and disputes that ground for relief number ten (ineffective assistance of counsel at punishment) is not adequately briefed.

### III.

Petitioner's claims number one, two and three (set out below) are constitutional challenges to Texas statutory law.

### Ground Number One

**Pruett was denied his rights under the Fifth, Eighth and Fourteenth Amendments because the penalty-phase instructions misled the jury regarding the effect of a "no" vote by a single juror.**

### Ground Number Two

**Pruett was denied his rights under the Eighth and Fourteenth Amendments because the Texas death penalty statute did not give his jury the option of imposing sentence of life without parole.**

### Ground Number Three

**Pruett was denied his rights under the Fifth, Eighth and Fourteenth Amendments because the Texas death penalty statute does not place the burden of proof on the State to disprove any circumstances mitigating against the death penalty.**

Petitioner relies on the legal authority and argument contained in his Petition for Writ of Habeas Corpus to counter the Motion for Summary Judgment.

### IV.

Petitioner's claim four (set out below) deals with a one-page summary of police reports of his prior murder conviction.

### Ground Number Four

**Pruett was denied his rights under the Sixth and Fourteenth Amendments because his rights to counsel and to confrontation were violated by the introduction of a TDCJ case summary of purported facts from his previous murder conviction.**

2

This was introduced against him at punishment over his confrontation clause objection. Petitioner claims a Sixth Amendment confrontation violation. Crawford v. Washington, 541 U.S. 36 (2004). Respondent relies on four arguments to support the summary judgment. The first is that the confrontation clause does not apply to sentencing proceedings; relying on United States v. Beydoun, 469 SW3d 102, 108 (5th Cir. 2006) and United States v. Navarro, 169 F.3d 228 (5th Cir. 1999). These cases do not support this argument. The Beydoun case deals with the federal sentencing guidelines and points out that Crawford does not address the confrontation clause application to sentencing evidence. Navarro deals with video conferencing. Respondent candidly cites Texas authority that illustrates Crawford's application to Texas sentencing evidence. Russeau v. State, 171 S.W.3d 871 (Tex. Crim. App. 2005) cert. denied, 126 S.Ct. 2982 (2006).

Respondent next argues procedural default by claiming Petitioner never specifically objected to the one page summary (which was contained in state's exhibits of his prison disciplinary, transfer, and classification records). Both Texas and federal law require a specific objection. The state court rejected Petitioner's claim, in part, on this reasoning. However, this is an unreasonable determination of the facts. At trial, the state sought to put into evidence the prison records. Petitioner's counsel objected on confrontation grounds. The trial judge, after attorney colloquy, told counsel that this objection was enough to challenge every item of evidence in the prison records except the fourteen-day waiting notice period, and having the custodian present. It is disingenuous and unreasonable to require Petitioner to have objected to each item of evidence, including the one page summary, when the trial judge told him that he need not to preserve his point for appeal.

Respondent also argues that the state court found that the summary of police reports was admissible as a business record and this was in keeping with federal law. The federal case cited by Respondent for this proposition (United States v. Vidaure, 861 F.2d 1337, 1340-41 (5th Cir. 1988) illustrates just the opposite. In fact, the state court finding here is contrary to the prevailing state law. Russeau holds that materials such as this police summary are not admissible business records. This inconsistent analysis of Petitioner's claim shows a misapplication of federal law and an unreasonable determination of the evidentiary facts.

Finally, Respondent argues that Petitioner was not harmed by this admission. This is also an unreasonable interpretation of the facts. Respondent refers to state's witnesses who testified about the previous murder to show the evidence was cumulative. This witness said Petitioner punched, kicked and held down the victim. He added the victim did not have any guns in his possession. He also said that upon sentencing that Petitioner told the courtroom occupants to stay away from him of he would kill them all. The summary added these damning facts. Petitioner tried to recruit his friends to do the murder, and when that failed, Petitioner solicited his brother and father to do the killing. Petitioner tried to escape when officers arrested him. Petitioner bragged about the murder. Petitioner tried to kill witnesses from jail. Petitioner was not remorseful. This is powerful death penalty fodder. It shows premeditation, adding weight to the proposition that the death of the prison guard was also planned. It shows future dangerousness in that he tried to escape and tried to have witnesses killed from jail. It shows a lack of remorse. Each of these facts should be sufficient to tip the scales from life in prison to execution for the average juror. This is illustrated by the state's argument making direct reference to

4

the "case summary" as contradicting Petitioner and showing he was a future danger. It can not be said the summary did not have an injurious and substantial effect on Petitioner.

A recent Texas Supreme Court case dealt with this issue on direct appeal. Here is their analysis of the issue in its entirety:

> "…appellant argues that the trial court violated his Sixth Amendment right to confront the witnesses against him when the court admitted in evidence, at the punishment phase, State's Exhibits numbers 242-254, which were Smith County Jail "incident reports," and State's Exhibits numbers 255-260, which were TDCJ "disciplinary reports." The trial court admitted these reports under the business records exception to the hearsay rule. See Tex. R. Evid. 803(6). The reports contained statements which appeared to have been written by corrections officers and which purported to document, in the most detailed and graphic of terms, numerous and repeated disciplinary offenses on the part of appellant while he was incarcerated. It further appeared that, in writing the statements, the corrections officers relied upon their own observations or, in several instances, the observations of others. None of the individuals who supposedly observed appellant's disciplinary offenses testified at his trial. Appellant's alleged disciplinary offenses included threatening physical harm and even death to others, refusing to work or cooperate, breaking out of his cell at night, exposing himself and masturbating in front of jailers and other inmates, verbally abusing jailers and other inmates, fighting with other inmates, and possessing contraband, including improvised weapons. *The record also reflects that most of the written reports detailing appellant's alleged disciplinary offenses were read aloud to the jury at the punishment phase and that the prosecutor referred to the reports numerous times during his closing argument at that phase*. (emphasis added)
> 
> "The Sixth Amendment's Confrontation Clause provides that, [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This

5

procedural guarantee is applicable in both federal and state prosecutions, Pointer v. Texas, 380 U.S. 400, 406 (1965), and bars the admission of testimonial statements of a witness who does not appear at trial unless he is unavailable to testify *and* the defendant had a prior opportunity to cross-examine him, Crawford v. Washington, 541 U.S. 36, 59 (2004). Generally speaking, a statement is "testimonial" if it is a solemn declaration made for the purpose of establishing some fact. Id. at 51.

"The reports in question contained testimonial statements which were inadmissible under the Confrontation Clause, because the state did not show that the declarants were unavailable to testify and appellant never had an opportunity to cross-examine any of them. Indeed, the statements in the reports amounted to unsworn, ex parte affidavits of government employees and were the very type of evidence the Clause was intended to prohibit. Id. at 50. The trial court erred in admitting those portions of the reports that contained the testimonial statements.

"Having found constitutional error, we need not reverse the trial court's judgment if we conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment. Chapman v. California, 386 U.S. 18, 24 (1967). See generally W. Lafave, et al., Criminal Procedure § 27.6(e) (2d ed. 1999). We cannot so conclude, however. *Given the highly damaging nature of the reports and the fact that the prosecutor repeatedly emphasized them during his closing argument, we find it impossible to say beyond a reasonable doubt that the reports did not influence the jury in its assessment of appellant's future dangerousness.* (emphasis added) We sustain points of error...."

Russeau v. State, 171 S.W.3d 871 (Tex. Crim. App. 2005) cert. denied, 126 S.Ct. 2982 (2006).

The factual and applicable laws in the Russeau case are like that in Petitioner's case. It is unreasonable and arbitrary to give Russeau a new punishment hearing, but not Petitioner.

6

V.

Petitioner relies on the argument and authorities set out in his ground number five, six and seven set out below to counter the Motion for Summary Judgment:

### GROUND NUMBER FIVE

**Pruett was denied his rights under the Sixth and Fourteenth Amendments because his rights to counsel and to confrontation were violated by the trial court's limiting the cross-examination of the medical examiner.**

### GROUND NUMBER SIX

**Pruett was denied his rights under the Sixth and Fourteenth Amendments because his rights to the assistance of counsel and due process were violated by the trial court's exclusion of a witness the defense hoped would offer testimony supporting the defensive theory that the victim's death was related to a prison-guard smuggling investigation.**

### GROUND NUMBER SEVEN

**Pruett was denied his rights under the Sixth and Eighth Amendments because his rights to counsel and due process were violated by the trial court's suppression of Damant Jackson's testimony.**

IV.

Petitioner's eighth and ninth grounds are set out below:

### GROUND NUMBER EIGHT

**Pruett was denied his rights under the Sixth and Fourteenth Amendments because his rights to counsel and due process were violated by the prosecutions' failure to produce the state investigator's notes.**

**GROUND NUMBER NINE**

**Pruett was denied his rights under the Sixth and Fourteenth Amendments because his rights to counsel, due process and confrontation were violated by the trial court's refusal to require production of previously made statements of witnesses Michael Hall and Michael Ross.**

These grounds for relief involve a complex sequence of trial events. Trial court Judge Johnson ordered the state to disclose any written or recorded statements and the substance of any oral statements made by the accused and a list of witnesses to the making of and acknowledgment of each statement. Court Record at pages 67 – 68. This was at pretrial. The state learned that Hall and Ross claimed Petitioner had made oral statements to them that he did the murder before the trial started. The state did not disclose the statements to defense as required by the order. Petitioner took the witness stand and denied the killing. The state, over objection, produced Hall and Ross in rebuttal. They testified Petitioner told them he had killed the prison guard. Petitioner objected based on surprise and asked for the information previously ordered. Trial court Judge Villarreal would not allow defense access to verbatim statements from Hall and Ross to police for cross-examination use.

Trial court Judge Johnson, after an evidentiary hearing, concluded that the state intentionally failed to disclose Petitioner's admissions in direct contravention of his order. He made the following conclusions of law:

> "The accused has the right to inspect evidence material to his defense. (Bell v. State, 866 SW2d 284) (Tex. App. – Hou. 14th Dist. 1993)

"The Texas Code of Criminal Procedure gives the Court the authority to order the State to disclose discoverable information.

"The trial court made such an order in this cause.

"The State violated the order by not disclosing material evidence.

"Hall and Ross statements claiming the accused had admitted to stabbing Nagle was material evidence.

"Defense attorneys have the right to depend on prosecutors complying with pretrial discovery orders.

"Hall and Ross were allowed to testify over the objection of the accused as to the undisclosed information.

"The trial court's decision to allow the testimony should not be disturbed unless such a decision constitutes an abuse of discretion. (Gomez v. State, 70 SW2d 352, 353) (Tex. App. – Hou. 14th Dist, 1986).

"To determine whether the Court's action is an abuse of discretion, a two-part test should be applied. First the Court must determine whether the State acted in bad faith in calling the witnesses after failing to reveal the substance of their testimony, secondly, the Court must determine whether the accused could have reasonably anticipated the testimony.

"The State acted in bad faith in withholding the information.

"The State deliberately disregarded the Court's order to obtain an advantage.

"Applicant was not in a position to anticipate this testimony under th4 circumstances. This was error and harmed Applicant. (Berger v. United States, 295 U.S., 78, 68, 1935).

"The trial court abused its discretion in allowing the testimony.

9

> "The prosecutor had in his possession detailed summaries of interviews with Hall and Ross. These constituted witness statements under 615f(2) Rules of Evidence.
>
> "Counsel for Applicant was entitled to use these notes in cross-examination pursuant to Rule 615.
>
> "These witness statements contain inconsistencies with trial testimony. (See Applicant's notes at Applicant's Exhibits A & B, Reporter's Record Post-conviction Habeas Corpus Hearing.)
>
> "It was error by the Court to deny Applicant access to the witness statements. (State v. Hoffman, 514 SW2d 248) (Tex. Crim. App. 1974).
>
> "The testimony of Hall and Ross was the State's key rebuttal evidence.
>
> "The failure of the Court to compel production harmed Applicant and violated his rights under the United States Constitution.
>
> "In light of these fundamental and material violations of the Constitution, the Rules of Evidence, and the trial court's pretrial discovery, the Applicant's conviction should be set aside."

The Texas Court of Appeals rejected the trial court judge's findings because "there is no general constitutional right to discovery in a criminal case" and the defendant only has a right to be informed of exculpatory evidence. Respondent relies on this as established federal law.

Petitioner contends that the state adjudication is based on an unreasonable interpretation of the facts at trial, and law that is not applicable to Petitioner's situation.

10

The thrust of Petitioner's claim for violation of his due process rights and right to counsel is that the state violated a court order and obtained an advantage by not revealing evidence of Petitioner's inculpatory statements. Petitioner's counsel should be able to rely on the fact that the State would tender evidence as required by court order. This reliance would shape trial strategy, as found by the trial court judge. Petitioner is entitled to relief under <u>Berger v. United States,</u> 295 U.S., 78, 68, 1935 which stands for the proposition that a prosecutor's duty is to use every legitimate means to bring about a just conviction, but to refrain from improper methods calculated to produce a wrongful conviction. Disobeying a court order (nondisclosure of statements of the defendant) and then proceeding to use the nondisclosed evidence (statements of the defendant to witnesses) against him was an improper method of prosecution. This situation was exacerbated when trial Judge Villarreal refused the defense access to law enforcement verbatim notes of the witness interview about the statements. Thus, the defense was surprised and then left without ammunition to counter the damning evidence. Also, Petitioner's decision to testify was clearly based in part on the lack of impeaching evidence in the form of admissions of guilt. This violated Petitioner's rights under the Texas and United States constitutions and a new trial is the appropriate remedy.

## CONCLUSION

Petitioner has shown that his trial on guilt was unfair and that his death sentence was based on inadmissible, unreliable evidence. The court should grant Petitioner relief on his Petition for Habeas Corpus, or in the alternative, deny the Motion for Summary Judgment and require further proceedings.

Respectfully submitted,

/s/ Richard W. Rogers, III
RICHARD W. ROGERS, III
Federal No. 4452
State Bar No. 17191200
1756 Santa Fe
Corpus Christi, Texas 78484
TEL 361/888-7620
FAX 361/888-7619
Attorney for Robert Lynn Pruett

CERTIFICATE OF SERVICE

I hereby certify that a copy of Petitioner's Response to Respondent's Motion for Summary Judgment has been electronically filed and mailed, postage prepaid on March 31, 2007 to counsel for Respondent:

Deni S. Garcia
Assistant Attorney General
Office of the Attorney General
Postconviction Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711

/s/ Richard W. Rogers, III