IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

AUG 1 2 2010

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| ROBERT LYNN PRUETT, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | NO. C-06-CA-465-H |
| | § | |
| RICK THALER, | § | |
| Director, Texas Department | § | |
| of Criminal Justice, | § | |
| Correctional Institutions | § | |
| Division, | § | |
| | § | |
| Respondent. | § | |

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

This is a petition for a writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254. The conviction was for capital murder; the punishment death by lethal injection. After thorough review, the Court finds that the petition for habeas corpus relief should be denied.

## I. INTRODUCTION

Petitioner Robert Lynn Pruett was convicted in the 156th District Court of Bee County, Texas of capital murder under TEX. PENAL CODE § 19.03(a)(6)(A). The charge was capital murder because the victim was Daniel Nagle, a correctional officer at the McConnell Unit in Beeville, Texas, where Pruett was a prisoner. On April 30, 2003, after a sentencing hearing and based on the jury's responses to the special issues submitted by the Court, the Petitioner was sentenced to death by lethal injection. On direct

appeal, the Texas Court of Criminal Appeals affirmed his conviction and sentence. **Pruett v. State**, No. 74,370, 2004 WL 3093232 (Tex. Crim. App. Sept. 22, 2004). Petitioner then challenged his conviction and sentence on state habeas review. The trial court recommended that his conviction be set aside because certain rulings during his trial violated his rights under Texas law. The Court of Criminal Appeals independently reviewed the case and adopted the trial court's findings except for the all-important findings upon which relief was recommended. The Court rejected those findings and denied habeas relief. **Ex parte Pruett**, 207 S.W.3d 767 (Tex. Crim. App. 2005).

Petitioner timely filed the present petition under section 2254, and asserted not fewer than ten grounds for relief:

(1) that his Fifth, Eighth and Fourteenth Amendment rights were violated by the trial court's failure to instruct the jury regarding the effect of a single "no" vote;

(2) that his Eighth and Fourteenth Amendment rights were violated by the Texas death penalty statute's failure to allow the sentencing option of life without parole;

(3) that his Fifth, Eighth and Fourteenth Amendment rights were violated because the Texas death penalty statute does not place the burden on the State to disprove any mitigating circumstances beyond a reasonable doubt;

(4) that his Sixth and Fourteenth Amendment rights were violated by the introduction into evidence of a TDCJ case summary of purported facts surrounding his previous murder conviction;

(5) that his Sixth and Fourteenth Amendment rights were violated by the trial court's limiting his cross-examination of the medical examiner;

(6) that his Sixth and Fourteenth Amendment rights were violated by

the trial court's exclusion of a witness the defense hoped would offer testimony supporting his theory that the victim's death was related to a prison-guard smuggling investigation;

(7) that his Sixth and Fourteenth Amendment rights were violated by the trial court's exclusion of Damant Jackson's testimony;

(8) that his Sixth and Fourteenth Amendment rights were violated by the prosecution's failure to produce the state investigator's notes;

(9) that his Sixth and Fourteenth Amendment rights were violated by the trial court's refusal to require production of the prior statements of rebuttal witnesses Michael Hall and Michael Ross; and

(10) that his Sixth and Fourteenth amendment rights were violated because his trial attorney rendered ineffective assistance.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), a petitioner may not obtain federal habeas relief on any claim adjudicated on the merits by a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. **Moore v. Johnson,** 225 F.3d 495, 501 (5th Cir. 2000). A state-court decision is contrary to established federal law if that decision is based on a rule that contradicts the governing law set forth by the Supreme Court. **Williams v. Taylor,** 529 U.S. 362, 405 (2000). A decision that "confronts a set

of facts that are materially indistinguishable" from a decision of the Supreme Court but arrives at a different result is also contrary to clearly established federal law. **Id**. at 406. Finally, a state-court decision is an unreasonable application of clearly established federal law if the state court correctly identifies the governing rule but applies it unreasonably to the facts or if it unreasonably extends or fails to extend it to the facts presented. **Id**. at 413.

Section 2254(d)(2) applies to questions of fact. **Moore**, 225 F.3d at 501. The Court must give deference to the state court's findings of fact  unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

### III. ANALYSIS

### A. Claim #1: The 10-12 Rule

In his first claim for relief, Petitioner argues that the Texas "10-12" rule violates due process and the prohibition on cruel and unusual punishments because it does not provide for a jury instruction on the effect of a failure to agree on a sentence. TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2. This failure, Petitioner argues, affirmatively misleads the jury on their role in the sentencing process.

Under the Texas "10-12" rule, the jury is instructed that, in capital sentencing, a "yes" answer to any issue must be unanimous. **Id**. In order to answer "no" to any issue, 10 or more jurors must

agree. **Id**. If there is neither a unanimous "yes" nor a 10-juror "no," the judge will impose a life sentence. **Id**. Capital juries are not instructed, however, on the effect of a failure to reach a decision. **Id**.

In *Jones v. United States*, 527 U.S. 373 (1999), the Supreme Court addressed the question of whether a federal death penalty defendant's Eighth Amendment right to be free from cruel and unusual punishment was violated when the jury was not informed of the consequences of a failure to reach a decision. **Id**. at 380. In *Jones*, the defense requested, and was denied, an instruction which informed the jurors that if they were unable to reach a decision, the judge would impose a sentence of life imprisonment without the possibility of parole. **Id**. at 379. The Supreme Court held that a jury that is not informed of the consequences of a deadlock is not misled about its role in sentencing and refused to impose a requirement that all juries be instructed on the consequences of the breakdown of the deliberative process. **Id**. at 383. Furthermore, the Fifth Circuit has held that granting habeas relief on the grounds that Texas's jury instructions are constitutionally inadequate would be creating a new rule of constitutional law in violation of the non-retroactivity principles in *Teague v. Lane*, 489 U.S. 288 (1989). **Webb v. Collins**, 2 F.3d 93, 95 (5th Cir. 1993).

Under *Teague*, a federal court may not announce a new rule of

constitutional law unless it is retroactive. **Teague**, 489 U.S. at 310. To be retroactive, a rule must (1) place certain primary conduct beyond the power of the criminal law to proscribe or (2) announce a watershed rule of criminal procedure. **Id.** at 311. The Fifth Circuit has consistently held that *Teague*'s non-retroactivity principles bar the creation of a rule requiring a jury instruction as to the consequences of a deadlock. *See* **Webb**, 2 F.3d at 95; **Alexander v. Johnson**, 211 F.3d 895, 898 (5th cir. 2000). Because petitioner has failed to show that this aspect of the Texas sentencing scheme violates his constitutional rights, he is not entitled to relief on the basis of this claim.

## B. Claim #2: Unavailability of Life Without Parole

In his second claim for relief, Petitioner argues that the Texas death penalty statute's failure to provide an option of life without parole violated his right to be free of cruel and unusual punishment. He argues that the "evolving standards of decency that mark the progress of a maturing society" now require that all capital juries be given the option to sentence the defendant to life without parole. **Trop v. Dulles**, 356 U.S. 86, 101 (1958).

The innovative sentencing option Petitioner is asking the Court to mandate in his case does not involve any rule that narrows the range of conduct or class of persons that the law punishes, nor is he seeking the announcement of a watershed rule of criminal procedure. *See* **Teague**, 489 U.S. at 311. A rule requiring the jury

to be given the option of a sentence of life without parole, therefore, would be a "new" and non-retroactive rule.

Furthermore, aside from the *Teague*-bar, Petitioner's "evolving standards of decency" argument is strained at best. The courts look to contemporary societal norms to determine whether a *punishment* is cruel and unusual, not whether the procedures for determining punishment are subject to improvement, so long as these procedures comply with Constitutional standards of due process. Consequently, this claim is without merit and cannot entitle Petitioner to relief.

## C. Claim #3: Burden of Proof on Mitigating Factors

In his third claim for relief, Petitioner argues that his Fifth, Eighth, and Fourteenth Amendment rights were violated because Texas does not place the burden on the State to disprove mitigating circumstances beyond a reasonable doubt. Petitioner argues that the State's failure to do so runs afoul of the rule articulated in *Ring v. Arizona*, 536 U.S. 584 (2002), requiring that the State prove any fact that increases the maximum penalty for a crime beyond a reasonable doubt. **Id**. at 602.

The statute invalidated in *Ring* required a judge to find the existence of a statutory aggravating factor in order to impose the death penalty. **Id**. at 603. Without the judge's finding of an aggravating factor, the most severe sentence a defendant could receive was life in prison. **Id**. The Court underscored that Ring had

made no claim with respect to mitigating circumstances and that the holding applied only to aggravating factors. **Id.** at 597, 609.

The Texas sentencing procedure in capital cases first asks the jury if they find beyond a reasonable doubt that there is "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(b)(1) & (c) (1991). If the jury answers "yes" to that question, it then must determine:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

**Id.** § 2(e)(1). The mitigation special issue assigns no burden of proof. If the jury answers "yes" to the mitigation special issue, the defendant receives a life sentence; if "no," a death sentence is imposed.

Casting a "lack of sufficient mitigation to warrant a sentence of life imprisonment" as an aggravating factor is at best a strained analysis--one which the Court will not adopt. The future dangerousness issue, which the jury in this case concluded the State proved beyond a reasonable doubt, was the only statutory aggravator that the jury encountered. The determination of either the existence or non-existence of circumstances in mitigation does not operate to increase the maximum penalty to which the defendant is exposed, but rather gives the jury an opportunity to impose a

8

sentence less severe  than the allowed maximum. It is, in short, an opportunity for the jury to show mercy to the defendant.

The Supreme Court has long recognized the distinction between factors in aggravation and factors in mitigation. *See, e.g.*, **Apprendi v. New Jersey**, 530 U.S. 466, 490–91 (2000). A finding of a circumstance in mitigation that allows the defendant to escape the maximum penalty for which he is eligible "neither expose[es] the defendant to a deprivation of liberty greater than that authorized by the verdict according to the statute, nor [does it] impose[] upon the defendant a greater stigma than that accompanying the jury verdict alone." **Id.** at 490. "Lack of mitigation" is not and has never been considered an aggravating factor.

Furthermore, The Fifth Circuit has held that "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." **Rowell v. Dretke**, 398 F.3d 370, 378 (5th Cir. 2008). Requiring not only that Texas assign a burden of proof to its mitigation special issue, but that it require the State to disprove mitigation beyond a reasonable doubt, would clearly be creating a new rule of constitutional law in violation of the non-retroactivity principles in *Teague*. The Court, therefore, rejects this claim.

**D.  Claim #4:  Admissibility  of  Summary  of  Facts  Surrounding Petitioner's Prior Conviction**

In his fourth claim for relief, Petitioner contends that the

admission of a six-page case summary and one-page offense summary regarding his prior murder conviction violated his rights to counsel and confrontation. He contends that the summaries were based on the State's interpretation of facts regarding his first murder conviction and were testimonial in nature, affording him a right to relief under *Crawford v. Washington*, 541 U.S. 36 (2004).

Petitioner objected generally to the admission of three exhibits, one of which contained the summary documents (48 Tr. Rec. 5-7). The exhibits to which he objected exceeded 200 pages in length (SHTr 289). On state habeas appeal, the Texas Court of Criminal Appeals ruled that his claim for relief was procedurally defaulted because he failed to object "with sufficient specificity to make the trial court aware of the complaint" (SHTr 289-90). TEX. R. APP. P. 33.1(a)(1)(A). In the alternative, the Court found that the summary was admissible as a business record under the Texas Rules of Evidence (SHTr 289-90). TEX. R. EVID. 803(6). Petitioner now claims that his objection to the entire exhibit was sufficient because he relied on assurances from the trial judge that such an objection would be enough to preserve error (48 Tr. Rec. 127-28).

Assuming *arguendo* that this claim is not procedurally defaulted and that admission of the evidence was a trial error, the claim is still unavailing. Petitioner bears the burden of proving that this error was not harmless. **Brecht v. Abrahamson**, 507 U.S. 619, 637 (1993). On federal habeas review, an error is harmless

unless it had a "substantial and injurious effect or influence" on the verdict. **Id.** at 623.

In this case, the jury knew from other evidence that Petitioner was serving a 99 year sentence for the murder of Ray Yarborough at the time the murder of Nagle occurred (45 Tr. Rec. 12). The jury had heard testimony as to the details of the previous murder, including evidence that Petitioner punched, kicked, and held down Yarborough during the assault and that he threatened to kill everyone in the courtroom upon being convicted (50 Tr. Rec. 21-22). They had also heard evidence that he had committed disciplinary infractions while in prison, which included fighting, trying to manufacture a weapon, and making repeated threats of physical violence against guards (48 Tr. Rec. 37-41, 54-55, 79-82, 173-74, 178-79). Of course, it was undisputed that Nagle, the victim in this capital murder case, was a correctional officer in the facility in which he was incarcerated.

Turning to the case and offense summaries, we find the following facts reported concerning the Yarborough murder: Petitioner solicited the murder, he tried to escape when arrested, he bragged about the murder, he tried to kill witnesses from jail, and he was not remorseful (St. Ex. 62). All of these details were certainly prejudicial. However, when considered in conjunction with the evidence the jury already had in its possession, it is difficult to conclude that this evidence had a "substantial and

injurious effect" on Petitioner's sentence. The jury was confronted with overwhelming evidence that Petitioner would pose a continuing threat to society, the most important being that they had just convicted him of murdering an officer in a correctional institution. It strains credulity to the breaking point to suggest that a reasonable jury confronted with all of the evidence *except* the summary reports would conclude that Petitioner did *not* pose a continuing threat to society. Accordingly, the error, if any, in admitting the case and offense summaries did not have a "substantial and injurious effect" on the sentence and was harmless. The Court finds that petitioner is not entitled to relief on this claim.

## E. Claim #5: Limitations on Cross Examination of Dr. Lloyd White

In his fifth claim for relief, Petitioner contends that his rights to counsel and confrontation were violated when the court limited his cross-examination of Dr. Lloyd White, the medical examiner who performed the autopsy on Daniel Nagle. Dr. White concluded that the assault was the cause of death, but that the immediate mechanism of death was heart failure (44 Tr. Rec. 23-24). He clarified at trial that the victim died of a heart attack brought on by the stress of the assault (44 Tr. Rec. 24-25). He also testified that the shank used in the assault could have caused a cut found on Petitioner's thumb, but conceded on cross examination that it may have been caused by something else (44 Tr.

12

Rec. 27-29).

Prior to Dr. White's testimony, the trial court conducted a hearing in which Dr. White revealed that he was involved in a dispute with Child Protective Services (CPS)(43 Tr. Rec. 43–81). He stated that CPS disagreed with testimony he gave in cases involving infant death and has, in some way that is unclear from the record, used this against him in a child custody matter (43 Tr. Rec. 54). He also stated that he would tell the truth and asked the prosecutor that CPS not be permitted to use his testimony against him in the child custody case (43 Tr. Rec. 68). He specifically noted that his troubles with CPS would cause him to be apprehensive about testifying in cases involving certain types of infant death (43 Tr. Rec. 57). Petitioner sought to cross examine Dr. White about his conflict with CPS to demonstrate bias (43 Tr. Rec. 43). The trial court denied this request on the grounds that any such questioning was irrelevant to the issues currently before the jury, noting that Dr. White had completed his autopsy a full two years before his troubles with CPS arose (43 Tr. Rec. 65, 77). Petitioner argues that these limitations on cross examination violated his Sixth Amendment right to confront the witnesses against him.

The state habeas court concluded that the probative value of Dr. White's conflict with CPS was outweighed by the possibility of harassment, embarrassment, and confusion of the issues and that the trial court did not err in limiting cross-examination on this issue

(SHTr 20). It also ruled in the alternative that, had the trial court's limitation on cross examination been an error, it would have been a harmless one (SHTr 20).

The state habeas court's determination that the trial court acted within its discretion in limiting the scope of Dr. White's cross examination was not an unreasonable application of federal law and is entitled to deference. 28 U.S.C. § 2254(d). The right to confrontation is subject to the broad discretion of trial judges to impose reasonable limits on irrelevant, repetitive, or harassing cross-examination. **Delaware v. Van Arsdall,** 475 U.S. 673 , 679 (1986). While the right to confrontation includes the right to cross examine, it does not guarantee defendants a right to cross-examine to any extent they desire. **Id.**

Dr. White had completed his autopsy report two years before his troubles with CPS arose and the opinions he expressed in his trial testimony were consistent with the conclusions in that report. It was reasonable for the trial court to conclude that cross-examination regarding the alleged bias would have had no probative value. The only other relevant testimony he gave was that the wounds on Petitioner's hand were consistent with wounds from the murder weapon, which he conceded on cross examination did not mean they were certainly caused by the murder weapon. There was no indication that the witness received anything in exchange for his testimony, and Petitioner does not allege that he did. It was,

14

therefore, reasonable for the habeas court to conclude that the trial court acted within its sound discretion in prohibiting this line of questioning because it was harassing and irrelevant. His ruling did not violate Petitioner's right to confrontation. The Court will not grant relief on this claim.

## F. Claim #6: Limitations on Evidence Supporting Defense Theory

In his sixth claim for relief, Petitioner alleges that his rights to counsel and due process were violated when the trial court excluded the testimony of Warden Thomas J. Prasifka. Petitioner contended that the testimony of Prasifka would further his defensive theory that prison gangs involved in a contraband-smuggling ring with other guards committed the murder because Nagle had informed on the smuggling ring. However, Prasifka testified outside the presence of the jury that Nagle did not act as an informant and had no involvement in the investigation (41 Tr. Rec. 94-97). The trial court denied Petitioner's request and excluded the testimony on the grounds that it was not relevant (44 Tr. Rec. 98). The state habeas court concluded that, because Prasifka's testimony would not have shown a nexus between the crime charged and the alternative perpetrator, it was correctly excluded as irrelevant (SHTr 22).

The right to due process includes the right to present witnesses in your own defense. However, in exercising that right a defendant must comply with established rules of procedure and

evidence. **United States v. Scheffer**, 523 U.S. 303, 308 (1998). State and federal rulemakers are given broad discretion under the Constitution to establish exclusionary rules of evidence, but those rules must not be arbitrary or "disproportionate to the purposes that they are designed to serve." **Id.** There is no due process violation where a trial court excludes evidence that cannot aid the defense. **Washington v. Texas**, 388 U.S. 14, 23 (1967); **Ashley v. Wainwright**, 639 F.2d 258, 261 (5th Cir. 1981).

Because Prasifka could not have testified favorably to the defense, and in fact would have only offered testimony tending to disprove Petitioner's gang-retribution theory, the trial court did not violate Petitioner's right to due process by excluding his testimony. Petitioner is not entitled to relief on this claim.

## G. Claim #7: Limitations on Impeachment Evidence

In his seventh claim for relief, Petitioner argues that his rights to counsel and due process were violated by the trial court's suppression of inmate Damont Jackson's testimony. Petitioner sought to call Jackson to impeach State's witness Anthony Casey, who testified that he heard Petitioner make incriminating statements, saw him near the victim's office near the time of the murder, and saw him change out of bloody clothes after the murder (42 Tr. Rec. 104).

Petitioner wanted Jackson to testify that he overheard Casey say that Pruett did not commit the murder, but that "some Mexican

16

dude" did (44 Tr. Rec. 139). During a hearing outside of the jury's presence, Jackson testified that he personally had never heard Casey make those statements about the murder (44 Tr. Rec. 140). Instead, a third inmate, Kevin Veschi, told Jackson that Casey told him that Pruett did not commit the murder (44 Tr. Rec. 141). Jackson only heard Casey say that "if [they] didn't stay out of his business that he was going to end up getting a murder case" (44 Tr. Rec. 140-41). The trial court excluded Jackson's testimony on the grounds that all of his material testimony was hearsay for which Petitioner had not established an exception (44 Tr. Rec. 141).

In habeas actions, federal courts do not sit to review the mere admissibility of evidence under state law. **Little v. Johnson**, 162 F.3d 855, 862 (5th Cir. 1998). A state trial court's evidentiary rulings will merit relief only when the error is so extreme that it would constitute a denial of fundamental fairness. **Little**, 162 F.3d at 862. Furthermore, the Court may only grant relief if the state adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

The trial and state habeas courts did not err in concluding that Jackson's testimony about what Veschi told him that Casey told him was inadmissible hearsay. Petitioner has made no effort to establish the existence of clearly established federal law supporting the right of a defendant to present hearsay evidence

that does not fall within an established exception, and the Court is aware of no such authority. Therefore, the Court will not grant relief on this claim.

## H. Claims #8 & #9: Discovery Order Violation

In his eighth and ninth claims for relief, Petitioner contends that his rights to due process, counsel, and confrontation were violated by the State's failure to inform Petitioner that Inmates Michael Hall and Michael Ross would testify and to disclose notes of interviews with the witnesses, despite a pretrial order to do so (2 Tr. Rec. 8). Ross and Hall both testified that Petitioner admitted to them that he had committed the murder (48 Tr. Rec. 164-165, 80). The state trial court found that the State's failure to disclose the prior statements was a violation of Petitioner's constitutional rights and recommended that the writ be granted (SHTr 28). The Texas Court of Criminal Appeals rejected this conclusion and refused to grant relief on this issue. **Ex Parte Pruett,** 207 S.W.3d 767, 767 (Tex. Crim. App. 2005).

The Fourteenth Amendment requires prosecutors to turn over all exculpatory evidence upon a proper request by the defense. **Brady v. Maryland,** 373 U.S. 83, 87 (1963). However, there is "no constitutional right to discovery in a criminal case." **Weatherford v. Bursey,** 429 U.S. 545, 559 (1977). Petitioner does not argue, and the record does not show, that Ross or Hall presented any exculpatory evidence. He only argues that their surprise testimony

violated the pretrial order and the Texas Rules of Evidence. Petitioner does not cite, and the Court is not aware of, any Supreme Court precedent requiring the disclosure of incriminating evidence to the defense.

While it appears that calling these witnesses whose statements had not been disclosed did violate the pretrial order, admitting their testimony was not contrary to or an unreasonable application of clearly established constitutional law. The Court, therefore, cannot grant relief on this claim.

## I. Claim #10: Ineffective Assistance of Counsel

In his tenth and final claim for relief, Petitioner contends that his attorney rendered ineffective assistance because he failed to discover and present compelling mitigating evidence during the punishment phase of the trial. Petitioner does not identify any specific evidence that further investigation would have uncovered or that counsel had in his possession but refused to present to the jury.

Petitioner correctly states that an attorney has a duty to conduct a thorough investigation into his client's background for the purpose of developing mitigating evidence. **Wiggins v. Smith**, 539 U.S. 510, 521 (2003). To establish that an attorney was ineffective for failure to investigate, Petitioner must allege with specificity what an investigation would have uncovered and how it would have helped him at trial. **Miller v. Dretke**, 420 F.3d 356, 361

(5th Cir. 1989). Similarly, *Strickland* requires that a petitioner make an affirmative showing of deficiency and prejudice in order to prevail on a claim of ineffective assistance of counsel. **Strickland v. Washington,** 466 U.S. 668, 693 (1984).

Since he fails to identify any specific mitigating evidence that should have been presented or would have been uncovered by investigation, Petitioner can meet none of these standards. The Court, therefore, will not grant relief on this claim.

## IV. CONCLUSION

Because Petitioner has failed to show any violation of clearly established constitutional rights in connection with his conviction or sentencing, his petition for a writ of habeas corpus must be denied.

It is therefore ORDERED that Robert Lynn Pruett's petition for a writ of habeas corpus under 28 U.S.C. 2254 be, and it is hereby, DENIED.

SIGNED AND ENTERED this __10th__ day of August, 2010.


HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE